# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION
### CIVIL ACTION NO. 3:16-CV-00498-GCM

| | |
|---|---|
| GASTONIA 1228 INVESTMENTS, LLC | )<br>) |
| **Plaintiff,** | )<br>) |
| v. | ) **ORDER**<br>) |
| HB GASTONIA, LLC, VICTOR P. BALESTRA, NATHAN S. WARD, RICHARD SCHLANDER, JAMES W. HARPEL, SHAUN L. MCGRUDER, | )<br>)<br>)<br>)<br>)<br>) |
| **Defendants and Third Party Plaintiffs** | )<br>) |
| v. | )<br>) |
| EASCO HAND TOOLS, INC., APEX TOOL GROUP, LLC, AMERICAN HOME ASSURANCE COMPANY, | )<br>)<br>)<br>) |
| **Third Party Defendants** | ) |

**THIS MATTER** is before the Court upon Third Party Defendants' Motion to Dismiss Amended Third-Party Complaint (Doc. No. 22), Third Party Plaintiffs' Response in Opposition to Third Party Defendants' Motion to Dismiss Amended Third-Party Complaint (Doc. No. 26), and Third Party Defendants' Reply to Third Party Plaintiffs' Response (Doc. No. 27).

**I.     Background**

This action concerns alleged damage to an industrial facility at 1228 Isley Road in Gastonia, North Carolina (the "Property"), which third party defendants Easco Hand Tools, Inc. and Apex Tool Group, LLS (collectively the "Tenants") leased from the third-party plaintiff HB Gastonia, LLC ("Landlord") and used as a factory for manufacturing hand tools. (Amend. 3d Party Compl. (Doc. 20), ¶¶ 1, 4-6, 9). Landlord acquired the Property in 2006, subject to a multi-

year, written lease with Easco. (Doc. 20, ¶¶ 1-5). In 2010, Apex assumed Easco's obligations under the lease and occupied the Property until the lease expired on November 30, 2013. (Doc. 20, ¶ 6).

In Paragraph 10(a) of the lease, Tenants agreed to defend and indemnify Landlord against any claims for damages resulting from their "use, misuse, occupancy, possession or unoccupancy" of the Property, as follows:

> Tenant shall at all times indemnify Landlord for, defend Landlord against, and save Landlord harmless from, any liability, loss cost, injury, damage, or other expense whatsoever that may occur or be claimed by or with respect to any person(s) or property on or about the Leased Premises and resulting directly or indirectly from the use, misuse, occupancy, possession or unoccupancy of the Leased Premises by Tenant.

(Amend. 3d Party Compl., Ex. 1, (Doc. 20-1), p. 13). Under Paragraph 8 of the lease, Tenants also agreed to maintain the Property; keep it in good order and repair; not permit any waste to occur; and to make all repairs, replacements, restorations, or renewals necessary to keep the Property in the same condition as at the commencement of the Lease. (Doc. 20-1., pp. 9-10).

On May 24, 2016, Plaintiff, Gastonia 1228 Investments, LLC ("Plaintiff"), as successor in interest to the lender on a loan for the Property, filed this suit against Third Party Plaintiffs, asserting claims for alleged waste and damage to the Property. Plaintiff seeks damages for: oil staining and pooling on the warehouse floors; accumulations of oil on the ceilings and rafters of buildings; damage to the masonry, veneers, and siding of the buildings; and damage to the buildings' HVAC, electrical, natural gas, plumbing, and fire suppression systems. (Compl. (Doc. 1-1) ¶ 42; Doc. 20, ¶ 11).

Landlord denies Plaintiff's allegations, and, in the alternative, has asserted third-party claims against Tenants. Landlord has asserted claims against Tenants and American Home Assurance Co., Tenants' insurance carrier, for (i) express indemnity as provided under the Lease

(Count I); (ii) damage to the Property (Count II); and (iii) violation of OPHSCA (Count III). The Tenant Parties filed a motion to dismiss these claims and this matter is now ripe for disposition.

## II. Legal Standard

As a general rule, pleadings must entail "only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). This standard instructs that, when faced with a Rule 12(b)(6) motion to dismiss, "the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." *Mylan Labs, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). Thus, a "complaint may proceed even if it strikes a savvy judge that actual proof of [the facts alleged] is improbable, and 'that a recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 556 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). However, these broad requirements still "demand[] more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The complaint must state a claim that "raise[s] a right to relief above the speculative level" and must contain more than "naked assertion[s] . . . without some further factual enhancement." *Twombly*, 550 U.S. at 555-57.

## III. Discussion
### a. Count I, II, and III Meet The Plausibility Requirement

The Fourth Circuit has previously outlined how a district court should weigh a motion to dismiss for failing to meet the Rule 8 pleading standard and the common mistake of conflating this analysis with the more stringent summary judgment standard:

> Importantly, *Twombly's* requirement to plead something "more" than parallel conduct does not impose a probability standard at the motion-to-dismiss stage. *See Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

> Courts must be careful, then, not to subject the complaint's allegations to the familiar "preponderance of the evidence" standard. *Text Messaging Antitrust Litig.,* 630 F.3d 622, 629 (7th Cir.2010). When a court confuses probability and plausibility, it inevitably begins weighing the competing inferences that can be drawn from the complaint. But it is not our task at the motion-to-dismiss stage to determine "whether a lawful alternative explanation appear[s] more likely" from the facts of the complaint. *Houck v. Substitute Tr. Servs., Inc.,* 791 F.3d 473, 484 (4th Cir.2015). *Post–Twombly* appellate courts have often been called upon to correct district courts that mistakenly engaged in this sort of premature weighing exercise in antitrust cases. *See, e.g., Evergreen Partnering Grp.,* 720 F.3d at 50; *Erie Cnty., Ohio v. Morton Salt, Inc.,* 702 F.3d 860, 868–69 (6th Cir.2012); *Anderson News, L.L.C. v. Am. Media, Inc.,* 680 F.3d 162, 189 (2d Cir.2012).

*SD3, LLC v. Black & Decker (U.S.) Inc.*, 801 F.3d 412, 425 (4th Cir. 2015). So, the question before us today under Count One is whether the allegations "plausibly suggest" that if the alleged harm to property is proven, that harm was caused by Easco's and Apex's use of the Property and they are liable to the Third Party Plaintiffs for any damage to the property caused by Easco and Apex. *Twombly*, 550 U.S. at 557.

Tenants do not contest the existence of the indemnity provision in the lease or that Plaintiff has sued Landlord regarding the condition of the Property. The lease defines Tenants' indemnity obligations in broad terms, requiring Tenants to indemnify Landlord for any claims arising from their "use, misuse, occupancy, possession or unoccupancy" of the Property. (Doc 20-1, p. 13). The provision covers all claims resulting from Tenants' use of the Property, regardless whether those claims arise from Tenants' actions or their omissions. Tenants admit that the indemnity provision covers losses "resulting directly or indirectly from the use, misuse, occupancy, possession or unoccupancy of the Leased Premises by Tenant." (Doc. 23, p. 4). In the Amended Third-Party Complaint, Landlord alleged any harm to the property was caused by Tenant Parties' "use, misuse, occupancy, possession or unoccupancy of the Property." (Doc. 20, ¶ 11).

For the reasons cited in the Defendant and Third Party Plaintiff's Memorandum Opposing the Motion to Dismiss, the Court finds that the Complaint alleges sufficient facts to meet the plausibility standard for Claims I, II, and III. *See*, Doc. No. 26.

### b. Count II and III Do Not Fail Because Count I Is Derivative of Plaintiff's Claim

Regarding Counts II and III, Tenants argue that those claims are not "proper" under Rule 14. (Doc. 23, p. 5). Count II is a claim for damages to real property and Count III is a claim for the violation of N.C. Oil Pollution and Hazardous Substances Control Act of 1978. (Doc. 20, p. 4).

Landlord has argued that these claims do not need to fall within Rule 14 because it properly impleaded Tenants based on Count One. Rule 14 permits a defendant to implead a third-party based on a claim the third-party "is or may be liable to it for all or part of the claim against it." Fed. R. Civ. Proc. 14(a). Landlord is correct.

Rule 18 provides "a party asserting a claim, counterclaim, crossclaim, or third-party claim may join, as independent or alternative claims, as many claims as it has against an opposing party." Fed. R. Civ. Proc. 18(a). Thus, if Landlord asserted a derivative third-party claim against Tenants, it could join as many claims as it has against Tenants, whether they are derivative or not. *See* 4 Moore's Federal Practice § 18.02[2][c] (Observing that once a defendant asserts a "qualifying claim" under Rule 14, it "may join any other claims against a defending party").

So, since the Third Party Plaintiffs have satisfied the pleading requirements for Count I as detailed above and that is a qualifying claim under Rule 14, Rule 18 does apply to Counts II and III. *See, e.g.*, 3–14 Moore's Federal Practice–Civil § 14.04[3][c] (2014) ("It is important to

understand, however, that the defendant may not use the permissive party joinder rule to join claims against a third party unless it has properly impleaded that third party.").

Consequently, Claims II and Claims III are not dismissed.

IV. Conclusion

**IT IS THEREFORE ORDERED** that the Third Party Defendants' Motion to Dismiss Amended Third-Party Complaint (Doc. No. 22) be **DENIED.**

Signed: March 14, 2017

Graham C. Mullen
United States District Judge